**UNITED STATES OF AMERICA**
        **Plaintiff,**

    **v.**                                                   **Case No. 06-CR-82**

**PETER SANTOYA**
        **Defendant.**

## SENTENCING MEMORANDUM

The government charged defendant Peter Santoya with conspiring to distribute more than 500 grams of cocaine. 21 U.S.C. § 841(a)(1) & (b)(1)(B). Defendant pleaded guilty to the offense, and the probation office prepared a pre-sentence report ("PSR") in anticipation of sentencing. Based on a drug weight of 3.5 to 5 kilograms, the PSR assigned a base offense level of 30 under U.S.S.G. § 2D1.1(c)(5), then added 2 levels based on defendant's role in the offense under U.S.S.G. § 3B1.1(c),[1] for an adjusted level of 32. Subtracting 3 levels for acceptance of responsibility, and coupled with a criminal history category of V, defendant's imprisonment range would have been 140-175 months. However, because defendant had previously been convicted of a "controlled substance offense" and a "crime of violence," the PSR designated him a career offender under U.S.S.G. § 4B1.1. This had the effect of producing a base offense level of 34 and an imprisonment range of 188-235 months (final level

---

[1] The PSR based the enhancement on defendant's direction of another participant in the conspiracy, Thomas Dickmann, in dropping off money and picking up drugs. I previously sentenced Dickmann to 78 months in prison for his role in the conspiracy. United States v. Dickmann, No. 06-CR-82, 2007 WL 442397 (E.D. Wis. Feb. 6, 2007).

31, criminal history category VI).[2]

Defendant filed objections to drug weight (which he later withdrew), the aggravated role enhancement and a prior juvenile offense listed in the PSR, but conceded that these objections did not affect the guidelines due to his career offender designation. Accordingly, I made no findings on them. See Fed. R. Crim. P. 32(i)(3)(B) (stating that the court must rule on PSR objections unless it "determine[s] that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing).[3] However, defendant also requested a below-guideline sentence of 120 months based on his personal characteristics, the role of drug addiction in his offense and the overstatement of his criminal history by the career offender guideline. The government advocated a term at the low end of the range. Upon consideration of all of the factors set forth in 18 U.S.C. § 3553(a), I decided to impose a sentence of 138 months. In this memorandum, I set forth my reasons, in accordance with § 3553(c).

## I. SENTENCING STANDARD

"When sentencing a defendant, a district court must consider all sentencing factors enumerated in 18 U.S.C. § 3553(a)." United States v. Harris, No. 05-4259, 2007 WL 1713286, at *3 (7th Cir. June 15, 2007) (citing United States v. Dean, 414 F.3d 725, 728 (7th Cir. 2005)).

---

[2]The PSR assigned a career offender base level of 37, but because the statutory maximum for defendant's crime was 40 years under 21 U.S.C. § 841(b)(1)(B), I adopted a base level of 34. See U.S.S.G. § 4B1.1(b). The government did not file an information under 21 U.S.C. § 851 in this case. See United States v. Hernandez, 79 F.3d 584, 588-89 (7th Cir. 1996) (stating that if the government does not file a § 851 information the career offender base level is determined using the un-enhanced statutory maximum).

[3]I also did not consider any disputed factual matters in imposing the ultimate sentence under 18 U.S.C. § 3553(a).

2

Those factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The ultimate command of the statute is, after considering these factors, to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in" subsection(a). Id. This is the so-called "parsimony provision," which requires district courts to impose the minimum punishment needed to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant. See, e.g., United States v. Cull, 446 F. Supp. 2d 961, 963 (E.D. Wis. 2006).

While district courts must in all cases "consider" the guideline range, United States v. Booker, 543 U.S. 220, 245-46 (2005), the guidelines do not subordinate the other factors in § 3553(a). Rather, it is the parsimony provision that serves as "the guidepost for sentencing

3

decisions post-Booker." United States v. Ferguson, 456 F.3d 660, 667 (6th Cir. 2006). Several courts of appeals (including the Seventh Circuit) – and now the Supreme Court – have held that a guideline sentence may, on appeal, be presumed reasonable. But that presumption "applies only on appellate review." Rita v. United States, No. 06-5754, 2007 WL 1772146, at *9 (U.S. June 21, 2007); United States v. Demaree, 459 F.3d 791, 794-95 (7th Cir. 2006); see also United States v. Gama-Gonzales, 469 F.3d 1109, 1110 (7th Cir. 2006).[4] The sentencing judge is forbidden from indulging a similar presumption that the guideline sentence is the correct one. Rita, 2007 WL 1772146, at *9 (stating that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply"); Demaree, 459 F.3d at 794 (stating that the "judge is not required – or indeed permitted, United States v. Brown, 450 F.3d 76, 81-82 (1st Cir. 2006) – to 'presume' that a sentence within the guidelines range is the correct sentence"). Rather, the judge, after determining the guideline range, may decide that the guideline sentence:

> should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the "heartland" to which the Commission intends individual Guidelines to apply, U.S.S.G. § 5K2.O, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless. See Rule 32(f). Thus, the sentencing court subjects the defendant's sentence to the

---

[4] As Rita explained, this presumption simply reflects the fact that, once a district judge in his discretion has concluded that the guideline sentence is appropriate under § 3553(a), both the judge and the Sentencing Commission will have reached the same conclusion as to the proper sentence in the particular case. The resulting sentence is thus more likely to be reasonable. Rita, 2007 WL 1772146, at *6. Consistent with this rationale, the presumption should apply only when the district court has independently determined that the guideline sentence is sufficient but not greater than necessary under all of the factors in § 3553(a). See Rita, 2007 WL 1772146, at *11. The district court may not abdicate to the Sentencing Commission its obligation to consider the factors under § 3553(a). See 18 U.S.C. § 3553(a) ("The court, in determining the particular sentence to be imposed, shall consider [the seven factors set forth in the statute.]") (emphasis added).

4

thorough adversarial testing contemplated by federal sentencing procedure. Rita, 2007 WL 1772146, at *9. The Rita Court was also careful to note that, although the courts of appeals may presume reasonable a within guideline sentence, they may not presume a non-guideline sentence to be unreasonable, id. at *11, and district courts accordingly need not impose sentences greater than they believe necessary out of fear of reversal.

Thus, while Rita spoke primarily to those courts of appeals who presumed reasonable a guideline sentence, it also assured district courts that the guidelines are truly advisory.[5] The Court affirmed the broad sentencing discretion district judges possess under Booker and stated that they may impose non-guideline sentences by departing or applying § 3553(a). Correspondingly, the Court stressed the importance of providing reasons for the sentencing decision. Id. at *12. Although the judge may, absent non-frivolous arguments to the contrary, often say little when he imposes a guideline sentence, he must respond when "a party contests the Guidelines sentence generally under § 3553(a) – that is argues that the Guidelines reflect an unsound judgment, or, for example, that they do not generally treat certain defendant characteristics in the proper way – or argues for departure[.]" Id. at 12. The Court thus placed nothing off-limits for district courts, not even arguments that the guideline reflects "an unsound judgment" generally,[6] but instead placed on district courts the burden to explain why they impose the sentences they do. As I have often stressed post-Booker, while advisory guidelines

---

[5] As Justice Stevens stressed in his concurrence, given the clarity of the Court's holding, "I trust that those judges who had treated the Guidelines as virtually mandatory during the post-Booker interregnum will now recognize that the Guidelines are truly advisory." Id. at *18 (Stevens, J., concurring).

[6] We shall see when the Court decides Kimbrough and Gall next term exactly how far this discretion extends.

5

mean greater discretion, they also mean greater responsibility. See, e.g., United States v. Ranum, 353 F. Supp. 2d 984, 987 (E.D. Wis. 2005). I now provide reasons for the sentence I imposed on defendant Santoya.

## II. DISCUSSION

### A. Nature of Offense

Defendant joined a fairly large scale cocaine distribution conspiracy headed by a man named Mark Cubie, and he personally distributed a substantial amount of cocaine in Sheboygan, Wisconsin over the course of about a year.[7] The evidence of recorded phone calls and surveillance detailed his dealings with Cubie, from whom he received cocaine, and Dickmann, with whom he distributed it. The offense was quite serious given the amount involved and the length of time over which it occurred. However, there was no evidence of violence or weapon possession on defendant's part, so the offense was not aggravated in that sense. It also appeared that some of the cocaine defendant obtained from Cubie was for his own personal use, and that drug addiction contributed to his behavior.

### B. Defendant's Character and Background

Defendant was twenty-nine years old and had a fairly significant prior record, with several juvenile adjudications and adult convictions for resisting arrest and retail theft in 1996, drug trafficking and arson in 1998. However, this record was dated and compiled when defendant was between eighteen and twenty years old. He also had long periods of pro-social behavior. He did well in the State of Wisconsin's "challenge incarceration program" after his 1998 drug conviction, which resulted in early release from prison in 1999. He stayed out of

---

[7]As noted, although defendant initially objected to the PSR's relevant conduct assessment of 3.5 to 5 kilograms of cocaine, he later withdrew that objection.

6

trouble from 1999 to 2005, and worked a steady job in a factory for JL French from 2001 to 2005. A high school graduate, defendant expressed a desire to continue his education and started classes in state prison, where he served a sentence after revocation on the 1998 drug case after his arrest in this matter.[8]

Defendant's educational and vocational accomplishments were noteworthy, given his chaotic childhood. His father used drugs and abused defendant and his mother. Defendant joined a gang and started dealing drugs while still in high school, and developed a problem with crack and cocaine use. It appeared that a combination of a drug relapse, prodding from Dickmann, also an addict, and perhaps a desire to make fast money contributed to his re-involvement in crime in 2005.

I received positive letters from several family members, who indicated that defendant was helpful, respectful of others and fun to be around. His fiancé, Sally Baumann, wrote that defendant had ambitions and was saving money from his factory job in order to go to college. She stated that when he saw how she was struggling to become a teacher, working several jobs, he gave her the money he was saving to put towards her education. He also convinced her to drop two of her jobs and helped support her so she could concentrate on her studies. They planned that he would start his education after she finished her's, and she would then support him. Unfortunately, due to the intervention of his arrest, that never happened. But she did state that, thanks to defendant, she had become an early childhood education teacher.

**C.  Purposes of Sentencing**

I saw no evidence that defendant was physically dangerous, although he did present

---

[8]That sentence of about one year discharged shortly before I sentenced defendant.

7

some risk of recidivism given his record. See 18 U.S.C. § 3553(a)(2)(C). There was also a need for substantial confinement to promote respect for the law and to deter others, given the seriousness of the crime. See §§ 3553(a)(2)(A) & (B). Lesser sanctions had not deterred defendant. Finally, given his intractable drug problem, I concluded that defendant would benefit from sustained drug treatment. See § 3553(a)(2)(D).

**D.     Guidelines**

The guidelines called for a term of 188-235 months. As noted, the range was high because defendant qualified as a career offender. Absent that designation, the range would have been 140-175 months, under the PSR's calculations.[9] In looking at his predicate offenses, I found that the guidelines produced a term greater than necessary to satisfy the purposes of sentencing.

Defendant's first career offender predicate was a possession with intent to deliver cocaine case from 1998, when he was just twenty years old. That case involved 18.7 grams of cocaine, or 16 rocks, not an amount indicative of a large scale dealer.

The Sentencing Commission has acknowledged, in its recent Fifteen Year Report, that when career offender status is based on relatively minor drug offenses, the guidelines may create a sentence greater than necessary. United States v. Fernandez, 436 F. Supp. 2d 983, 989 (E.D. Wis. 2006) (citing United States Sentencing Commission, Fifteen Years of Guideline Sentencing 133-34 (Nov. 2004)). Specifically, the Commission has noted that unlike repeat violent offenders, whose incapacitation may protect the public from additional crimes by the

---

[9]Absent the 2 level role enhancement to which defendant objected, the range would have been 120-150 months. As noted above, I made no findings on this objection and did not consider the issue in imposing sentence.

8

offender, retail-level drug traffickers are readily replaced by new drug sellers. Thus, incapacitating a low-level drug seller for a long term prevents little, if any, drug selling; the crime is simply committed by someone else. The Commission has further noted that the recidivism rates of drug trafficking offenders sentenced under the career offender guideline based on prior drug convictions are much lower than other offenders who are assigned to criminal history category VI based on points alone. The career offender guideline thus makes the criminal history category a <u>less</u> accurate measure of recidivism risk than it would be without the inclusion of offenders qualifying because of prior drug offenses. <u>Id.</u> I found the Commission's concerns with the operation of the career offender guideline present in the instant case, where a drug addicted offender with a relatively minor record for dealing found himself placed in category VI with far more hardened criminals.[10]

Defendant's second career offender predicate was an arson case, which certainly sounds serious, and is a specifically listed offense in § 4B1.2(a)(2). However, defendant's case was not the type of arson the Commission had in mind. According to the PSR, defendant was in a local jail when his cell mate asked if he was afraid of fire. Defendant said no. The cell mate then asked if it was OK if he started a fire, and defendant said "go ahead." The cell mate

---

[10]The courts of appeals have been skeptical of district courts' reliance on the Commission's reports in imposing non-guideline sentences, <u>see, e.g.</u>, <u>United States v. Jointer</u>, 457 F.3d 682, 687-88 (7th Cir. 2006), which strikes me as odd given their effusive praise for this "expert" agency when reversing such sentences, <u>see, e.g.</u>, <u>United States v. Rattoballi</u>, 452 F.3d 127, 133 (2d Cir. 2006). The Commission is esteemed when the appellate courts are enforcing its diktats, yet unworthy of credence when district courts rely on its detailed reports explaining why certain guidelines sometimes do not work very well. In <u>Rita</u>, the Court seemed to go out of its way <u>both</u> to praise the Commission's expertise and to support district courts' discretion. Perhaps the Court's decision will ease some of the tension discussed in this footnote and encourage a collaborative process between the Commission and district courts, which will lead to better sentencing practices.

9

then produced a match and lighted some paper. Defendant admitted that he threw more paper on the fire once it started. There was no evidence that the fire spread, seriously endangered anyone or caused significant damage. This was certainly a stupid thing to do, but again defendant was only twenty years old, and it was not his idea to start the fire. Further, this was not the same as torching a house, and to sentence defendant as if he did so would actually create disparity by placing defendant in a category with others to whom he is not comparable. See United States v. Qualls, 373 F. Supp. 2d 873, 876-77 (E.D. Wis. 2005) (noting that some offenses technically qualifying as crimes of violence do not actually suggest a risk justifying a career offender sentence); cf. United States v. Chambers, 473 F.3d 724, 726-27 (7th Cir. 2007) (expressing dissatisfaction with courts designating all escapes as crimes of violence, absent evidence of the actual risks involved).

Therefore, I found that defendant's specific career offender predicates did not warrant a sentence consistent with the guideline range. That range was, under the circumstances, greater than necessary.

Further, imposition of a guideline sentence in the present case would have resulted in a defendant who had not previously spent more than about a year in prison receiving a sentence more than fifteen times that long. It was necessary to impose a longer sentence in this case in order to deter defendant, because shorter terms had not produced a deterrent effect. But an increase of such a magnitude was greater than necessary. See Qualls, 373 F. Supp. 2d at 877 ("Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend.").

Finally, the instant offense, while serious, did not require a fifteen+ year sentence to

10

provide just punishment. The offense was not aggravated by weapon possession or violence, and defendant's own drug use appeared to have played a part in his participation. Defendant's history also showed that he could behave pro-socially, as he generally did from 1999 to 2005. He was not someone who had constantly been in trouble, endangering the public. He also had significant positives in his character and background, as evidenced by the letters from his family and fiancé, which the guidelines did not take into account. I was particularly impressed with his selflessness in helping Ms. Baumann further her education. Under § 3553(a), I am permitted to consider the entirety of the defendant's background and character, not just the negatives reflected in his criminal history. See Rita, 2007 WL 1772146, at *17 (Stevens, J., concurring) ("The Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics . . . such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civic, charitable, or public service[, which] are, however, matters that § 3553(a) authorizes the sentencing judge to consider."). I also considered the strong family support defendant would have on release, which would assist in his re-integration and make him less likely to re-offend.

      For all of these reasons, I found that the guidelines produced a sentence greater than necessary to satisfy the needs for punishment, protection of the public and deterrence. Defendant requested a sentence of 120 months, but I found that term insufficient. Defendant distributed a substantial amount of cocaine – nearly five kilograms – over the course of about a year, and had a prior conviction for drug distribution. A more substantial term was needed to promote respect for the law and deter future violations. Under all of the circumstances, I found a sentence of 138 months sufficient but not greater than necessary. This sentence

produced substantial punishment, far greater than any previous sentences, and was sufficient to satisfy all of the purposes of sentencing, while acknowledging the mitigating factors discussed herein.

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 138 months.[11] I recommended that he participate in any substance abuse treatment programs available, including the 500-hour residential program. Upon release, I ordered him to serve a five year supervision term, with a drug aftercare and other conditions that appear in the judgment.

Dated at Milwaukee, Wisconsin, this 25th day of June, 2007.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

[11] The parties had agreed to recommend that the instant sentence run concurrently with defendant's state sentence after revocation. However, that sentence discharged prior to the completion of this case. At sentencing, defendant suggested that I "credit" or "adjust" the instant sentence to make it fully concurrent with the discharged state term. The government objected, and I agreed that to further reduce the sentence would be inappropriate. The court may grant an "adjustment" under U.S.S.G. § 5G1.3(b) or a departure under U.S.S.G. § 5K2.23 & 5G1.3 cmt. n.4 in order to make two sentences "fully concurrent," but that is appropriate only when the sentences are based on related conduct, which was not the case here. In cases in which the defendant is serving an undischarged term of imprisonment based on a revocation, the guidelines actually recommend consecutive sentences. See U.S.S.G. § 5G1.3 cmt. n.3(C). Notwithstanding these guideline provisions, I possessed discretion under § 3553(a) to reduce the instant sentence to account for the time spent in state custody. However, I concluded that to grant defendant's request would fail to acknowledge that he was on parole when he committed the instant offense and thus fail to provide just punishment and deter future offenses.

12